UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

Roy R. MACE, III                                                                                    PLAINTIFF

v.                                                                            CIVIL ACTION NO. 3:17-CV-283-CRS

Aaron SMITH, et al.                                                                              DEFENDANTS

## MEMORANDUM OPINION

I. **Introduction**

This case is before the Court on Defendants' motion for summary judgment. Specifically, Defendants assert that the Plaintiff, a Kentucky inmate, failed to properly exhaust his administrative remedies before bringing his federal civil rights claims, that some aspects are time-barred, and that, regardless, they fail on the merits. Plaintiff has not responded. Therefore, this matter is ripe for review. Finding that Plaintiff did not properly exhaust his administrative remedies for his conditions-of-confinement claim and that the statute of limitations has run on his failure-to-protect claim, the Defendants' motion for summary judgment will be granted and the case will be dismissed.

II. **Factual Background and Procedural History**

Roy R. Mace, III is an inmate currently housed at the Kentucky State Reformatory ("KSR") in La Grange, Kentucky.[1] Mace, proceeding *pro se* and *in forma pauperis*,[2] brought this action under 42 U.S.C. § 1983 on January 9, 2017, claiming that his Eighth Amendment right to

---

[1] The complaint arises from events occurring at KSR in 2015 and 2016. After that, Mace was incarcerated in various Kentucky correctional institutions, including Kentucky State Penitentiary (DN 1), Eastern Kentucky Correctional Complex (DN 12), Western Kentucky Correctional Complex (DN 32), Northpoint Training Center (DN 39), Green River Correctional Complex (DN 42), and Lee Adjustment Center (DN 45). Mace returned to KSR sometime between May 31 and June 15, 2018. DNs 47, 54.

[2] Mace requested to proceed *in forma pauperis* on January 23, 2017. DN 5. That motion was granted on February 21, 2017. DN 7. Mace also requested to have counsel appointed. DN 20. The Court denied that request, noting that no exceptional circumstances existed to justify the appointment of counsel. DN 25 at 2.

be free from cruel and unusual punishment was violated twice while at KSR in 2015 and 2016. DN 1. He named then-Warden Aaron Smith, Instructor for the Division of Corrections Training Diane Jackson,[3] "John Doe (Unit Administrator)," and "Jane Doe (Former Sgt.)" as defendants in their official and individual capacities. *Id*. at 1. The Court dismissed the official-capacity claims on initial review pursuant to 28 U.S.C. § 1915A. DN 17. Afterward, Mace moved to amend his complaint to replace John Doe with Ben Mitchell on August 3, 2017. DN 26. The Court granted that motion on March 2, 2018, simultaneously dismissing Jane Doe under Federal Rule of Civil Procedure 4(m). DN 40.

Mace brings two claims: a conditions-of-confinement claim and a failure-to-protect claim. For the conditions-of-confinement claim, Mace alleges that, around 10 AM on November 22, 2015, a sewer pipe burst in C-wing of KSR, causing his cell to flood with sewage. DN 1 at 5. He says he informed Defendants about the issue, but that they failed to do anything about it. *Id.* He alleges he was required to stay in his cell, walking in waste to retrieve his food tray, which he was then forced to eat in the flooded cell. *Id.* The cell remained that way for about seven hours until it was cleaned and he was finally permitted to take a shower. *Id.* As a result of the incident, Mace claims he developed painful, burning sores on his feet that did not heal for six months. *Id.* For the failure-to-protect claim, Mace alleges that, on February 5, 2016, he told Mitchell that he was having a conflict with another inmate, who had threatened him. *Id.* As a result, he requested protective custody. *Id.* Instead of receiving it (or even an investigation), he alleges he was placed in the same dorm with the inmate, who assaulted him later that day. *Id.* As a result of the incident, Mace claims he has developed a fear of others and hearing loss in his left ear. *Id*. at 6.

---

[3] Diane Jackson has since changed her name to Diane Lambert. However, she used the surname "Jackson" at the time relevant to Mace's complaint and all parties utilize that name. Therefore, the Court will follow suit.

While this case has been pending, Mace has repeatedly alleged that he was in danger at KSR and has requested that this Court intervene. *See* DNs 9, 11, 48. He has consistently requested the Court order that he be transferred to the Taylor County Detention Center or to a correctional institution outside the Commonwealth of Kentucky. Those requests have all been denied, with the Court noting that "a prisoner has no inherent right under the United States Constitution to be incarcerated in a particular institution." *See* DN 16 (citing *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). *See also* DN 56 at 5–7 (denying preliminary injunction after finding that Mace failed to show a likelihood of success on the merits or irreparable harm, that the issuance would cause substantial harm, and that the public interest would not be served).

This is also not the first time a motion for summary judgment has been tendered in this case. On December 18, 2017, Defendants moved for summary judgment, making many of the same arguments they make on the present motion. DN 33. Mace responded (DN 37) and Defendants replied (DN 38). However, shortly after the motion became ripe, the Court permitted Mace to amend his complaint. *See* DN 40. As a result, the Court reopened discovery and, "to avoid this action being litigated in a piecemeal fashion," denied the motion without prejudice until after the revised discovery deadline closed. *Id*. at 2. That deadline passed and the present motion for summary judgment stands submitted.

## III.   Legal Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." FED. R. CIV. P. 56(c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## IV.  Discussion

Defendants' motion for summary judgment argues that Mace's claims should be dismissed because Mace failed to properly exhaust his administrative remedies before bringing his § 1983 claim and that the claims fail on the merits. As to the failure-to-protect claim, Defendants also argue that the claim is time-barred.

### A.  Conditions-of-Confinement Claim

The Prison Litigation Reform Act ("PLRA") requires that prisoners challenging the conditions of their confinement exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion under the PLRA requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

The Kentucky Department of Corrections's ("KDOC") administrative remedy program is laid out in Kentucky Corrections Policies and Procedures ("CPP") 14.6, entitled "Inmate Grievance Procedure." *See* DN 59-2. To initiate a grievance, the inmate must submit a grievance form within five business days after the grievable incident occurs. CPP 14.6(II)(J)(1)(a). The grievance should include a "Brief Statement of the Problem" covering all aspects of the issue and identifying all individuals involved. CPP 14.6(II)(J)(1)(a)(5). After a grievance is properly filed, an informal resolution will be attempted to resolve the grievance. CPP 14.6(II)(J)(1)(b). If the grievant is not satisfied, they may appeal to the Grievance Committee, CPP 14.6(II)(J)(2), the Warden, CPP 14.6(II)(J)(3), and the Commissioner of KDOC, CPP 14.6(II)(J)(4), in turn. After the Commissioner responds or fails to respond within the required time, the remedy is exhausted. If an inmate begins the grievance process and is then transferred from the institution, the grievant may appoint another inmate to decide whether to appeal. CPP 14.6(II)(M)(1). In the event the grievant is transferred and does not appoint a proxy, the grievance process is discontinued and dismissed unless the grievance has already been appealed to the Commissioner. CPP 14.6(II)(M)(1)(b).

Defendants allege that dismissal is proper on the conditions-of-confinement claim because Mace did not: file his grievance within five days as required by CPP 14.6(II)(J)(1)(a)(2), name the Defendants or other staff in his administrative remedy as required by CPP 14.6(II)(J)(1)(a)(5), or appeal the Warden's determination to the Commissioner as required by CPP 14.6(II)(J)(3)(c). Mace did not respond to the present motion for summary judgment but, on

a prior motion, argued that he filed his grievance within the proper time but that it was sent back to him with instructions to hold it until the Grievance Aide came to pick it up. DN 37 at 1. That delay, he reasons, justifies his delayed filing. *Id*. He did not address the other two alleged deficiencies.

The arguments of Defendants are well-taken. The KSR records provided by Defendants show that Mace's conditions-of-confinement grievance (number 15-1080) was filed on December 21, 2015. DN 59-3 at 3. In his grievance, Mace noted that the incident occurred on November 22, 2015. *Id*. Therefore, as was later determined, the grievance was not filed within the five business days required by CPP 14.6(II)(J)(1)(a)(2). Further, in his grievance, Mace references "staff," but does not give their names as required by CPP 14.6(II)(J)(1)(a)(5).

There does appear to have been some confusion regarding the Warden's response and final appeal. Under the grievance policy, the Warden had fifteen days to respond once the grievance appeal was received. CPP 14.6(II)(J)(3)(b). The appeal was filed on January 29, 2016 and received by the Warden on February 8, 2016. DN 59-3 at 2. As a result, the response was due February 26, 2016. However, the Warden did not respond. Eventually, the Warden returned the grievance to a lower level for investigation around April 29, 2016. *Id*. Those results were returned to the Warden on May 11, 2016. DN 59-2 at 2. It appears at that point there was another mix-up and the Warden did not immediately review the appeal. As a result, Mace inquired about the appeal on June 24, 2016. DN 59-3 at 9. The grievance was then sent again to the Warden, where it was received on June 30, 2016. *Id*. at 2, 9. Ultimately, the response issued on July 13, 2016. *Id*. at 1.

The policy provides that, when a grievance is returned to a lower level, the time limits begin anew. CPP 14.6(II)(J)(3)(b). However, at least two delays at the Warden's level were

6

longer than the permissible fifteen day period. This delay would ordinarily give some pause. However, assuming the Warden missed his deadline, Mace would have become entitled to appeal to the Commissioner without having the Warden review it. CPP 14.6(II)(J)(5)(a). By failing to exercise such early review and by failing to appoint a proxy to appeal the Warden's response when it arrived as required by CPP 14.6(II)(M)(1), the grievance process was discontinued and dismissed in accordance with CPP 14.6(II)(M)(1)(b).

The Defendants have adduced evidence such that there is no issue of material fact as to the exhaustion of administrative remedies. Mace failed in three independent ways to comply with KDOC's policy and properly exhaust his administrative remedies. Since such exhaustion is required by the PLRA, Defendants are entitled to judgment as a matter of law. Therefore, the Defendants' motion for summary judgment will be granted.

### B. Failure-to-Protect Claim

Defendants argue that dismissal of the failure-to-protect claim is proper because Mace did not exhaust administrative remedies, the statute of limitations has run on the claims, and the claim fails on the merits. The Court finds that a genuine issue of material facts exists as to whether Mace made a second protective custody request which, since it was not processed through proper channels, could not have been exhausted. However, the Court finds that the applicable statute of limitations has run on the claims against Mitchell since he was originally sued as an unknown defendant.

#### i. Exhaustion

The PLRA requirement of proper exhaustion extends to all inmate suits about prison life, including failure-to-protect claims. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The inmate grievance policy, by its terms, applies only to "grievable" issues, CPP 14.6(II)(B)–(C). Non-

7

grievable issues include, as relevant to this claim, a "[c]lassification decision or appeal of a classification decision including transfer denial, recommendation, or approval." CPP 14.6(II)(C)(5). KSR uses a different administrative remedy procedure to appeal those determinations to the Classification Committee. This process, though distinct from the inmate grievance procedure, is still an administrative remedy system which must be exhausted. *Owens v. Keeling*, 461 F.3d 763, 770–72 (6th Cir. 2006) (exhaustion required through classification appeal despite being deemed non-grievable under the general inmate grievance procedure).

Mace filed his first request for protective custody on January 11, 2016. DN 59-6 at 4. However, Mace did not know the name or inmate numbers of any individuals he alleges threatened him. *Id*. As a result of that uncertainty, the request was denied. *Id*. Mace indicated he did not wish to appeal that determination. *Id*. Ultimately, Mace was assaulted by another inmate on February 5, 2016. DN 59-7. Afterward, he filed a grievance (number 16-0107) where he alleged that he had requested protective custody prior to his assault, which was denied without a refusal form or the opportunity to appeal. DN 59-8 at 2. As a remedy, he requested to be moved to the Taylor County Detention Center for his own safety. *Id*. That grievance was returned as non-grievable. *Id*. at 1. Finally, on May 4, 2018, Mace requested protective custody again, stemming from the February 5th incident. DN 59-9. That request was also denied, since KSR was already actively separating Mace and the inmate he had an altercation with. *Id*. Again, Mace indicated he would not like to appeal. *Id*.

With respect to claims arising from the two documented protective custody determinations (DNs 59-6 at 4 and 59-9 at 1), Mace failed to exhaust his administrative remedies because he did not appeal the protective custody determinations to the Classification Committee. However, to the extent Mace claims that he requested protective custody sometime on February

5th just before his assault, exhaustion would not be required because no official protective custody determination was made with an opportunity for his to appeal the determination.

On that issue, the dispute boils down to Mace's claims that he made the request and Mitchell's claims that he did not. Mace made the claim originally in his complaint, stating that "on 2-5-16 I told John Doe that I had a conflict with an Inmate and about his threats to me, I even requested protective custody to avoid this inmate." DN 1 at 5. He reiterated similar claims in his grievance, where he stated "On 2-5-16 I was struck in the face by another Inmate. I had requested protective custody prior to this, but was refused and placed on the yard in General Population. There was never a protective custody refusal signed by me prior to being thrown into General Population." DN 59-8 at 2. Mace's claim that he requested protective custody but was not given a custody refusal to sign, taken with the fact the other two protective custody refusals include his signature, indicate that there could have been an unprocessed request for protective custody. Mitchell, disputing the allegation, stated that:

> Mace's allegation that he told me on February 5, 2016 that he had a conflict with an inmate and was being threatened by that inmate is incorrect. Mace did not tell me on that date he was being threatened by another inmate. Nor did he request protective custody from me. Had he in fact done so, I would have initiated a detention order to house him in administrative segregation for his protection pending investigation of his claim.

DN 59-6 at 2.

The dispute about the existence of a second protective custody request boils down to a "he said/she said" argument, which is the epitome of a genuine issue of material fact. *See e.g. Lee v. Willey*, 10-12625, 2012 WL 4009629 at *5 (E.D. Mich. 2012) (genuine issue of material fact created by dispute over whether protective custody was requested and summarily denied without an appeal provided). Credibility determinations are the province of the jury, rather than

9

the judge ruling on summary judgment. *Anderson*, 477 U.S. at 255. Therefore, dismissal based on exhaustion at this stage for the failure-to-protect claim would be improper.

### ii. Statute of Limitations

Since § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985). Thus, in Kentucky, § 1983 actions are subject to the one-year statute of limitations found in KY. REV. STAT. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). While state law sets the statute of limitations, federal law determines when the statute begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Federal law establishes that the § 1983 claim accrues and the statute of limitations begins to run when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

If Mace made a second request for protective custody on February 5, 2016, which Mitchell ignored, that date would be the date Mace knew or should have known of his injury and the date the statute of limitations would begin to run. However, the statute of limitations is tolled for the period during which administrative remedies are being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). To that end, Mace filed his failure-to-protect grievance on February 9, 2016 and it was subsequently rejected as non-grievable on May 2, 2016. DN 59-8 at 2. The rejection form indicates that Mace was given a protective custody form instead. *Id.* at 1. Since KSR treated the protective custody form as a continuation of the same administrative remedy, the Court will as well. Mace subsequently filed that form on May 4, 2016 and it was rejected on May 6, 2016. DN 59-9. Giving Mace the benefit of tolling up to that point, the statute of limitations would run on May 6, 2017.

10

The complaint was filed on January 1, 2017. DN 1. This would ordinarily fall within the statute of limitations. However, Mace's complaint originally sued Mitchell as "John Doe." DN 1 at 1, 5. Mitchell didn't replace Doe until Mace moved for that amendment on August 17, 2017. DN 26. An amendment that changes a party relates back to the filing of the complaint when, within 90 days of the filing of the original complaint, "the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c). However, "adding new, previously unknown defendants in place of 'John Doe' defendants is considered a change in parties, not a mere substitution of parties, and such amendments do not satisfy the mistaken identity requirement of Rule 15(c)." *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (cleaned up).

Here, as in *Smith*, Mace "did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and . . . did not find out within the . . . limitations period." *Id*. As a result, the amendment replacing Doe with Mitchell does not relate back to the filing of the complaint. By the filing of the motion to amend, the statute of limitations was three months past. Therefore, the failure-to-protect claim is untimely and must be dismissed.

## V. Conclusion

The Court will grant Defendants' motion for summary judgment on all claims and dismiss the case. Mace's conditions-of-confinement claim was not properly exhausted as required by the PLRA and his failure-to-protect claim was untimely filed.

A separate order will be entered in accordance with this opinion.

December 21, 2018

Charles R. Simpson III, Senior Judge
United States District Court

11